UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAMELA CREWS,

      Plaintiff,

                                      CASE NO. 2:11-CV-11656
v.                                          JUDGE NANCY G. EDMUNDS
                                          MAGISTRATE JUDGE PAUL KOMIVES

FANNIE MAE, WELLS FARGO HOME
MORTGAGE, UNITED GUARANTY,
CHASE FL 5-3102, and TROTT & TROTT,

      Defendants.

_____/

## REPORT AND RECOMMENDATION ON DEFENDANTS WELLS FARGO AND FANNIE MAE'S MOTION FOR SUMMARY JUDGMENT (docket #15)

I.      RECOMMENDATION: The Court should grant defendants Wells Fargo and Fannie Mae's motion for summary judgment. If the Court accepts this Recommendation, the Court should also *sua sponte* grant summary judgment to the nonmoving defendants.

II.     REPORT:

A.     *Background*

Plaintiff Pamela Crews, proceeding *pro se*, commenced this action on April 18, 2011, against defendants Fannie Mae (the Federal National Mortgage Association), Wells Fargo Home Mortgage, United Guaranty, JPMorgan Chase Bank, and the law firm of Trott & Trott. Plaintiff's complaint asserts a number of claims arising from a mortgage foreclosure. The basic facts are not in dispute. On January 6, 2004, plaintiff borrowed $126,000 from Washington Mutual Bank (WAMU). The loan was secured by a mortgage on plaintiff's property located in Redford, Michigan. *See* Def.s' Mot., Ex. A. On April 30, 2007, the loan and mortgage were assigned to defendant Wells Fargo.

1

*See id*., Ex. B. Plaintiff defaulted on the loan, and foreclosure by advertisement proceedings were brought by defendant Trott & Trott. On April 27, 2011, Wells Fargo purchased the property at a sheriff's sale. The Sheriff's Deed was recorded on May 6, 2011. *See id*., Ex. 6. As to the facts leading to plaintiff's default, the complaint alleges:

> On October 13, 2010, I requested that Chase Bank conduct a Fraud Investigation as it relates to my social security number and property address . . . . I also requested that Wells Fargo . . . and UNITED GUARANTY due [sic] the same. At the time of the request I was current with all payments for the allege[d] mortgage. Once Chase Bank, United Guaranty and Fannie Mae failed to respond to my fraud investigation request, and Wells Fargo responded by asking me to fill out a "form" so their company can locate my Social Security Number in their system, I immediately stopped all payments, because if [] there was valid contract in place; why would I need to provide my Social Security Number to Wells Fargo? This is when I filed an Identity Theft Complaint alleging Wells Fargo and Chase as the perpetrators, MORTGAGE FRAUD. After that, I received a notice from Trott and Trott Law Firm stating that my mortgage would be accelerated by Fannie Mae and United Guaranty. When I called Trott and Trott, their agent stated that Trott and Trott did not have any knowledge of United Guaranty and did not know why this company was claiming to be the note holder. This was perpelxing to me! I wanted to know how a Law Office can successfully represent their client without knowing all the facts and true parties in interest.

Compl., at 2-3. The complaint also alleges that a copy of the promissory note which plaintiff received from Trott & Trott contained a stamp at the bottom of the first page which states: "PAY TO THE ORDER OF/WITHOUT RECOURSE/WASHINGTON MUTUAL BANK, FA," and signed by Brenda F. Brendle, First Vice President. This stamp does not appear on the original copy of the promissory note. *See* Compl., at 3 & Exs. A & B. Plaintiff alleges that this evidences two different promissory notes, one of which she had no knowledge. Plaintiff generally alleges that defendants "fraudulently conceal[ed] and alter[ed] documents" as part of "a conspiracy to take [her] property unlawfully through using counterfeit securities as evidence of a purported debt," and that the mortgage documents are counterfeit securities under 18 U.S.C. § 474. Plaintiff asserts claims

under the Truth-in-Lending Act (TILA) and Regulation Z, as well as state law claims for breach of fiduciary duty and unjust enrichment. In making these claims, plaintiff also alleges that the foreclosure violated Michigan law governing foreclosure by advertisement, MICH. COMP. LAWS § 600.3204, and that Wells Fargo's actions are illegal because Wells Fargo was not authorized to transact business in Michigan.

The matter is currently before the Court on defendant Wells Fargo and Fannie Mae's motion to dismiss, or in the alternative for summary judgment. Defendants argue that they are entitled to dismissal or summary judgment because: (1) plaintiff's TILA claim is time-barred; (2) the foreclosure complied with the foreclosure by advertisement statute, MICH. COMP. LAWS § 600.3204; (3) Wells Fargo was not required to have a certificate of authority to foreclose on the mortgage; (4) plaintiff's unjust enrichment claim is barred by the mortgage; and (5) defendants did not owe plaintiff any fiduciary duty. On May 27, 2010, plaintiff filed various exhibits, including judicial decisions and orders of the Comptroller of the Currency.[1] On June 8, 2011, plaintiff filed a response to defendants' motion. Plaintiff does not respond to the legal arguments raised by defendants. Rather, plaintiff raises an additional claim that defendants (plaintiff does not specify which defendant) lacked standing to foreclose on the mortgage note. Defendants filed a reply on June 6, 2007. For the reasons that follow, the Court should grant defendants' motion for summary judgment.

B.   *Legal Standard*

Under Rule 56, summary judgment should be granted "if the movant shows that there is no

---

[1] Plaintiff filed these exhibits as part of a motion for judicial notice. By Order entered this date, I have granted in part and denied in part that motion. Specifically, I granted the motion only to the extent of recognizing the existence of these decisions. To the extent plaintiff seeks judicial notice of the facts found or legal conclusions reached, judicial notice is not appropriate.

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).[2] "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248). In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325; *see also*, FED. R. CIV. P. 56(c)(1) (moving party may meet its burden by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

---

[2] Although Fannie Mae and Wells Fargo move alternatively for dismissal under Rule 12(b)(6), a court can only decide a Rule 12(b)(6) motion on the basis of the pleadings; if the court considers matters outside the pleadings, the court must treat the motion as one for summary judgment under Rule 56. *See Kostrzewa v. City of Troy*, 247 F.3d 633, 643-44 (6th Cir. 2001); *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997). Because the parties have submitted matters outside the pleadings, defendants' motion is appropriately treated solely as one for summary judgment.

evidence to support the fact."). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e). To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue. As the Supreme Court has explained, "[t]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

C.      *Analysis*

    1.      *TILA Claim*

"The Truth in Lending Act was enacted to promote the informed use of credit by consumers by requiring meaningful disclosure of credit terms." *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 163 F.3d 948, 950 (6th Cir. 1998) (citation omitted); *see also*, 15 U.S.C. § 1601. Plaintiff alleges that defendants violated the TILA by failing to make various disclosures required by the Act and the regulations promulgated under the Act. Defendants argue that plaintiff's claim is barred by the statute of limitations.

    TILA provides a civil cause of action for damages arising from TILA violations in 15 U.S.C.

§ 1640. That section, however, provides that "[a]ny action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e).[3] By the plain language of the statute, plaintiff's TILA claim accrued at the time of the alleged failure to disclose, that is, when the loan was consummated on January 4, 2004. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1045 (9th Cir. 2011). The one year period therefore began to run on January 5, 2004, and expired on January 5, 2005. Because plaintiff's complaint was not filed until April 18, 2011, over six years after the limitations period expired, it is barred by § 1640(e). *See Aiyash v. BAC Home Loans Serv., LP*, No. 10-12259, 2010 WL 4629219, at *3 (E.D. Mich. Oct. 12, 2010) (Randon, M.J.).[4] Accordingly, the Court should grant summary judgment to defendants on plaintiff's TILA claim.

    2.    *Foreclosure By Advertisement and Standing to Foreclose*

Plaintiff's complaint also alleged that defendants improperly foreclosed by advertisement under Michigan law. The Court should conclude that defendants are entitled to summary judgment on this claim.

Michigan law provides that

---

[3] A borrower may assert TILA violations beyond the one year period defensively to obtain recoupment or set-off in an action by the lender to collect the debt. *See* 15 U.S.C. § 1640(e). Because plaintiff is basing his own cause of action on the TILA violations, this portion of § 1640(e) is inapplicable.

[4] Under 15 U.S.C. § 1635(f), a borrower has a continuing right to rescission of the loan agreement if TILA disclosures are never made that is not subject to the one year limitations period in § 1640(e). *See Mills v. EquiCredit Corp.*, 172 Fed. Appx. 652, 655 (6th Cir. 2006). This right of rescission itself, however, expires at the earlier of three years after the date of consummation or the sale of the property. *See id.*; 15 U.S.C. § 1635(f). Because both the property has been sold and it has been over three years since the transaction was consummated, plaintiff's right of rescission has expired, even if defendants completely failed to make TILA disclosures.

> a party may foreclose a mortgage by advertisement if all of the following circumstances exist:
> (a) A default in a condition of the mortgage has occurred, by which the power to sell became operative.
> (b) An action or proceeding has not been instituted, at law, to recover the debt secured by the mortgage or any part of the mortgage; or, if an action or proceeding has been instituted, the action or proceeding has been discontinued; or an execution on a judgment rendered in an action or proceeding has been returned unsatisfied, in whole or in part.
> (c) The mortgage containing the power of sale has been properly recorded.
> (d) The party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage.

MICH. COMP. LAWS § 600.3204(1). The foreclosure by advertisement statute further provides that "[i]f the party foreclosing a mortgage by advertisement is not the original mortgagee, a record chain of title shall exist prior to the date of sale under section 3216 evidencing the assignment of the mortgage to the party foreclosing the mortgage." *Id.* § 600.3204(3). Here, all of the requirements for foreclosure by advertisement were satisfied.

First, plaintiff does not dispute that a default occurred; indeed, the complaint admits that plaintiff stopped paying on the mortgage in response to defendants' failure to adequately respond to plaintiff's requests for an investigation. Second, there is no evidence that any legal action or proceeding had been instituted to recover the debt. Third, the mortgage contains an express right of acceleration and power of sale, *see* Def.s' Br., Ex. A, ¶ 22, and the mortgage was recorded on January 13, 2004, with the Wayne County Register of Deeds, *see id.* at 1 (Register's recording stamp). Fourth, the mortgage was foreclosed by Wells Fargo, the owner of the indebtedness by virtue of an assignment of the mortgage from WAMU to Wells Fargo on April 30, 2007. *See id.*, Ex. B. Finally, § 600.3204(3) was satisfied because the assignment was recorded with the Wayne County Register of Deeds on May 7, 2007. *See id.* at 1 (Register's recording stamp).

Plaintiff responds to this analysis by arguing that "defendants" lacked standing to foreclose on the mortgage under § 600.3204. Because Wells Fargo is the defendant that initiated the foreclosure, only Wells Fargo's standing is relevant. The undisputed facts make clear that Wells Fargo had an enforceable interest in the mortgage and thus had standing to institute foreclosure by advertisement. At the outset, to the extent plaintiff challenges the validity of the assignment from WAMU to Wells Fargo, plaintiff lacks standing to raise such a challenge. The mortgage note explicitly grants the lender a right to sell or assign the note. *See* Def.s' Br., Ex. A, ¶ 20. This being the case, any problems in the assignment between WAMU and Wells Fargo is a matter between those parties, but does not relieve plaintiff of the indebtedness or provide a basis upon which plaintiff can challenge the assignment. *See Livonia Prop. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC*, 717 F. Supp. 2d 724, 736-37 (E.D. Mich.) (Feikens, J.), *aff'd*, 399 Fed. Appx. 97, 102-03 (6th Cir. 2010).

In arguing that Wells Fargo lacked standing to foreclose on the property, plaintiff principally relies on the Michigan Court of Appeals' decision in *Residential Funding Co., LLC v. Saurman*, 292 Mich. App. 321 (2011), *rev'd*, 490 Mich. 909, 805 N.W.2d 183 (2011). In *Saurman*, the court considered whether Mortgage Electronic Registration Systems (MERS), which was not named as the lender but was designated the mortgagee as a nominee for the lender, could foreclose by advertisement under § 600.3204. The court held that MERS could not invoke § 600.3204, because as only a nominee of the lender it did not itself have an interest in the indebtedness itself, but only an interest in the property. *See Saurman*, 292 Mich. App. at ___, 2011 WL 1516819, at *4-*6. Judge Wilder dissented, concluding that MERS did, as the mortgagee, have an interest in the indebtedness. *See id*. at ___, 2011 WL 1516819, at *12-*13. Plaintiff's reliance on *Saurman* is

misplaced, for two reasons. First, the Michigan Supreme Court reversed the court of appeals's decision, explicitly adopting Judge Wilder's conclusion that MERS had an interest in the indebtedness. *See Saurman*, 805 N.W.2d at 183-84. Second, Wells Fargo does not stand in the same position as did MERS in *Saurman*. Here, WAMU was both the lender and the mortgagee, and thus had an interest in the indebtedness. Unlike with MERS, however, WAMU assigned its entire interest, including its interest in the indebtedness to Wells Fargo. Thus the court of appeals's decision in *Saurman* would be inapplicable even if it remained good law. *See Williams v. U.S. Bank Nat'l Ass'n*, No. 10-14967, 2011 WL 2293260, at *1 (E.D. Mich. June 9, 2011) (O'Meara, J.).[5]

Plaintiff also contends that the note was not properly transferred under Article 3 of the Uniform Commercial Code. As noted above, however, plaintiff has no standing to challenge the validity of the assignment. And in any event, the foreclosure by advertisement statute simply requires that the party instituting the foreclosure have an interest in the indebtedness. There is no requirement that the defendants produce the original note or be a holder in due course of the note. *See Smith v. MERS*, No. 10-12508, 2011 WL 4469148, at *9 (E.D. Mich. Aug. 4, 2011) (Hluchaniuk, M.J.), *report and recommendation adopted*, 2011 WL 4479481 (E.D. Mich. Sept. 27, 2011) (O'Meara, J.). All that is required under § 600.3204 is that the party foreclosing have an interest in the indebtedness. As explained above, Wells Fargo clearly had such an interest, and thus it had standing to initiate the foreclosure under Michigan law.

3. *Certificate to Do Business in Michigan*

Plaintiff also argues that the foreclosure was invalid because the defendants did not have a

---

[5]Plaintiff appears to argue that MERS holds the same position in this case as it did in *Saurman*. This assertion is without merit. The evidence presented by the parties makes clear that Wells Fargo, not MERS, instituted the foreclosure. Indeed, there is no evidence in the record that MERS was in anyway involved in the mortgage or foreclosure, and plaintiff does not name MERS as a defendant.

certificate of authority to transact business in Michigan. This claim is without merit.

Michigan law provides that "[a] foreign corporation shall not transact business in this state until it has procured a certificate of authority to transact business from the administrator." MICH. COMP. LAWS § 450.2011. However, Michigan law further provides that a foreign corporation "is not considered to be transacting business in this state, for purposes of this act, solely because it is carrying on this state" one or more of various activities, including "[m]aintaining, defending, or settling any proceeding," "[c]reating or acquiring indebtedness, mortgages, and security interests in real or personal property," "[s]ecuring or collecting debts or enforcing mortgages and security interests in property securing the debts," and "[o]wning, without more, real or personal property." MICH. COMP. LAWS § 450.2012(1)(a), (g), (h), (I). Lending to plaintiff, acquiring plaintiff's mortgage through assignment, and enforcing their rights through the foreclosure by advertisement fall within these provisions, and thus even if defendants have not obtained a certificate to do business in Michigan they do not run afoul of § 450.2011. *See Calkins v. Midland Funding NCC-2 Corp.*, 412 F. Supp. 2d 699, 710 (W.D. Mich. 2006); *Gayles v. Deutsche Bank Nat'l Trust Co.*, No. 292988, 2010 WL 4137508, at *2 (Mich. Ct. App. Oct. 21, 2010). This claim is therefore without merit.

    4.    *Unjust Enrichment Claim*

Plaintiff also alleges a claim for unjust enrichment, asserting that defendants "have knowingly accepted and received for value Plaintiff's promissory note, without giving anything of value in return to Plaintiff." Compl. at 10, ¶ 40. The Court should conclude that defendants are entitled to summary judgment on this claim, for two reasons.

First, it is well established under Michigan law that a quasi-contract or implied contract

theory, such as unjust enrichment, can only be maintained if the transaction in question is not the subject matter of an express contract. *See Barber v. SMH (U.S.), Inc.*, 202 Mich. App. 366, 375, 509 N.W.2d 791, 796 (1993); *Kuhfeldt v. Liberty Mut. Ins. Co.*, 833 F. Supp. 632, 638 (E.D. Mich. 1993) ("There cannot be an express and an implied contract covering the same subject matter at the same time."). Here, there was an express contract covering the mortgage and loan to plaintiff, and thus an unjust enrichment claim is not viable. *See Aiyash*, 2010 WL 4629219, at *3. Second, under Michigan law, "[t]he elements of a claim of unjust enrichment are: (1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Barber*, 202 Mich. App. at 375, 509 N.W.2d at 796; *see also*, *Belle Isle Grill Corp. v. Detroit*, 256 Mich. App. 463, 478, 666 N.W.2d 271, 280 (2003). Here, plaintiff does not allege how it would be inequitable for defendants to retain the benefit of the contract. WAMU loaned plaintiff $126,000.00, and gave a mortgage on the property to secure the loan. Plaintiff does not allege that WAMU never advanced the $126,000.00 borrowed by plaintiff, nor any other circumstances rendering defendants' enforcement of their rights under the mortgage inequitable. *See Aiyash*, 2010 WL 4629219, at *3. Accordingly, the Court should conclude that defendants are entitled to summary judgment on this claim.

     5.     *Fiduciary Duty Claim*

Plaintiff also alleges that defendants breached a fiduciary duty in foreclosing on the property. This claim is without merit. The Michigan courts have recognized that "[d]amages may be obtained for a breach of fiduciary duty when a 'position of influence has been acquired and abused, or when confidence has been reposed and betrayed.'" *Meyer & Anna Prentis Family Foundation, Inc. v. Barbara Ann Karmanos Cancer Institute*, 266 Mich. App. 39, 47, 698 N.W.2d 900, 908 (2005)

11

(citation omitted). Whether a fiduciary duty exists "is a question of law for the court to decide." *Id*. at 44, 698 N.W.2d at 906. "The placement of trust, confidence, and reliance must be reasonable, and placement is unreasonable if the interests of the client and nonclient are adverse or even potentially adverse. *Id*. (citing *Beaty v. Hertzberg & Golden, P.C.*, 456 Mich. 247, 260-261, 571 N.W.2d 716, 722 (1997)). Here, plaintiff cannot succeed on a fiduciary duty claim as a matter of law. The Michigan courts have explicitly held that a fiduciary relationship does not arise in the lender-borrower context, even where the borrower alleges inexperience and reliance on the lender. *See Farm Credit Servs. of Mich.'s Heartland, P.C.A. v. Weldon*, 232 Mich. App. 662, 680, 591 N.W.2d 438, 447 (1998); *Ulrich v. Federal Land Bank of St. Paul*, 192 Mich. App. 194, 196, 480 N.W.2d 910, 911 (1991) (per curiam). Plaintiff alleges no other special facts, beyond the existence of a borrower-lender relationship, which would give rise to a fiduciary duty. *Cf. Smith v. Saginaw Savings & Loan Ass'n*, 94 Mich. App. 263, 274-75, 288 N.W.2d 613, 618 (1979). Accordingly, the Court should conclude that defendants are entitled to summary judgment on fiduciary duty claims.

D.   *The Non-Moving Defendants*

Defendants United Guaranty, Chase, and Trott & Trott have not moved for summary judgment or joined in defendants Wells Fargo and Fannie Mae's motion. Nevertheless, the Court should conclude that they are entitled to summary judgment *sua sponte*. It is well established that "[a] court may grant a motion to dismiss even as to nonmoving defendants where the nonmoving defendants are in a position similar to that of moving defendants or where the claims against all defendants are integrally related." *Bonny v. Society of Lloyd's*, 3 F.3d 156, 162 (7th Cir. 1993); *see also*, *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 743 (9th Cir. 2008). A court dismissing a plaintiff's claims against moving defendants may *sua sponte* dismiss non-moving defendants as well

12

where "it is clear that the same ruling would inevitably apply to each of the defendants." *Rose v. Arkansas Valley Envtl. & Utility Auth.*, 562 F. Supp. 1180, 1189 n.11 (W.D. Mo. 1983). The same rule applies in the summary judgment context. *See Zinna v. Cook*, 428 Fed. Appx. 838, 841 (10th Cir. 2011); *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 384-85 (7th Cir. 2008); *Stepnes v. Ritschel*, 771 F. Supp. 2d 1019, 1048 (D. Minn. 2011). Here, plaintiff's claims against defendants are undifferentiated–the complaint asserts all of the claims against the "defendants" collectively. Thus, for the same reasons that the moving defendants are entitled to summary judgment, the nonmoving defendants are likewise entitled to summary judgment.

E.      *Conclusion*

In view of the foregoing, the Court should conclude that there are no genuine issues of material fact and that plaintiff's claims fail as a matter of law. Accordingly, the Court should grant defendants Wells Fargo and Fannie Mae's motion for summary judgment. Because this same analysis applies to plaintiff's claims against the remaining defendants, the Court should *sua sponte* grant summary judgment to the nonmoving defendants.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931

F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 2/8/12

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on February 8, 2012.
>
> s/Eddrey Butts
> Case Manager